ÁLVAREZ & PASCUAL, INC., demandante y recurrida, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrente.

*Número:* 12,466   *Resuelto:* 2 de febrero de 1962

*J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar de Justicia, J. C. Santiago Matos, Procurador Auxiliar,* abogados del recurrente; *Omar Cancio Sifre, Diego Guerrero Noble* y *R. García Cintrón,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Rigau.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

La firma demandante se dedica principalmente a la importación y compraventa de artículos de joyería y a la representación, con carácter exclusivo en esta plaza, de un número de casas norteamericanas. Están envueltas en este litigio las actividades de la demandante como comisionista y representante de esas casas. En relación con dichas actividades el Secretario de Hacienda impuso a la demandante unas multas administrativas a tenor con lo dispuesto en el último párrafo de la Sección 65 de la Ley de Rentas Internas vigente entonces, Ley Núm. 85 de 20 de agosto de 1925, según enmendada, *13 L.P.R.A. sec. 1221.* La demandante recurrió al Tribunal Superior y allí obtuvo sentencia favorable. El

Secretario de Hacienda recurre ante nosotros para que revisemos esa sentencia.

En su capacidad de comisionista y representante de firmas del exterior la demandante toma órdenes de comerciantes de Puerto Rico y envía dichas órdenes a sus representados en los Estados Unidos. Estos envían los artículos vendidos directamente a los comerciantes o compradores en Puerto Rico y le pagan a la demandante una comisión sobre las órdenes despachadas.

Surge de la prueba que en el curso de los trabajos del Departamento de Hacienda, en dicho Departamento notaron una serie de irregularidades en lo referente al pago de los arbitrios por parte de algunos comerciantes que habían introducido al país joyería tributable ordenada a través de la demandante.

Por ejemplo, el Sr. Ulises Laboy (persona que había sido el Director del Negociado de Arbitrios del Departamento de Hacienda para la fecha de autos pero que al momento de declarar era un ciudadano particular dedicado a actividades privadas) declaró en el juicio lo siguiente:

"Bueno al nosotros cotejar las órdenes radicadas por los contribuyentes de Puerto Rico con Alvarez & Pascual apreciamos que las cantidades varían en cuanto a lo ordenado y lo recibido según la factura comercial presentada por los importadores. . ." T. E. 64–65.

También declaró el Sr. Laboy que "al intervenir los del Negociado una orden por cuatro mil y pico de dólares y sinembargo para pagar esa factura se presentó una factura de ciento y pico de pesos." T. E. 63. (Del contexto de la declaración de Laboy se aprecia que al él decir "para pagar esa factura" se refiere a la factura presentada para propósitos del pago de los arbitrios, que como se sabe se cobran a base de un porcentaje del valor de los artículos comprados.)

La prueba demostró, y así lo concluyó el tribunal a quo, el cual citamos, que en algunos casos "la mercancía despachada e introducida *se facturó fraccionadamente*, y que el

introductor local pagó el arbitrio *solamente sobre parte* de la mercancía." (Bastardillas nuestras.) Continúa la conclusión de hecho del Tribunal Superior:

"Existe en autos una orden tomada en papel impreso de la demandante, fechada septiembre 12, 1951, conteniendo 8 renglones de artículos, 4 de ellos marcados con un número 1 dentro de un círculo y los 4 restantes marcados con un número 2, y una nota que dice: *Hacer dos órdenes por 1 y 2 y escribir carta que despachen ambas juntas y facturen aparte.*

"Existe también una comunicación de la firma Fernando del Toro, de Mayagüez, importadores de joyería, fechada 30 de julio de 1951, dirigida a la demandante y cuyo texto es el siguiente:

"Adjunto a la presente tenemos el gusto de incluirles cheque por la cantidad de $40.50, correspondiente a nuestra factura pendiente.

"Además de la orden que personalmente hiciéramos en su oficina de cadenas "Silkay" le agradeceremos nos ordene las siguientes para que las incluyan con la orden anterior siempre y cuando aún no hayan despachado las otras.

| Núm. 3 | 6 dozs. cadenas 18″ | 14K |
| Núm. 5 | 6 dozs. cadenas 18″ | 14K |
| Núm. 6 | 3 dozs. cadenas 18″ | 14K |

"De esta orden y la anterior *puede indicarle a la casa que nos pueden facturar para pagar impuestos 2 dozs. núm. 3, 1 dz. núm. 5 y 1 doz. núm. 6.*" (Bastardillas nuestras.)

Como expresamos al comienzo, cuando en el Departamento de Hacienda notaron varias irregularidades en relación con el pago de los arbitrios sobre joyería que había sido ordenada a través de la demandante, recurrieron a ésta para que le suministrara las facturas de las órdenes pedidas para examinarlas, a tenor con los dispuesto en la citada sección 65 de la Ley de Rentas Internas vigente entonces, cuya sección 65 examinaremos en breve.[1]

---

[1] Esa Ley de Rentas Internas de 1925 fue derogada y sustituida por la Ley de Impuestos Sobre Artículos de Uso y Consumo de Puerto Rico, Ley Núm. 2 de 20 de enero de 1956, *13 L.P.R.A. sec. 4001 y sigtes.* El texto de la sección 65 aplicable a este caso es el dispuesto por la Ley Núm. 139 de 28 de abril de 1949 y es el que aparece en *13 L.P.R.A. sec. 1221.*

Mediante carta de *10 de junio de 1954* el Secretario de Hacienda Sr. Descartes solicitó de los demandantes que suministraran a su oficina copias auténticas de las facturas comerciales correspondientes a una serie de órdenes de compras hechas en Puerto Rico a través de la demandante y despachadas por sus representados en los Estados Unidos. Con su carta el Secretario acompañó una relación de las órdenes de compras sobre las que interesaba las facturas y les advirtió en la misma carta que de no enviar los demandantes los documentos solicitados se les impondrían las sanciones que disponía la Ley de Rentas Internas.

En 30 de julio de 1954 el Secretario concedió a la demandante una prórroga de 30 días para entregar las facturas en cuestión. En *2 de agosto de 1954* la demandante, mediante abogado, se dirigió al Secretario informándole que no podía entregar las facturas. Por carta de *18 de febrero de 1955* el Secretario comunicó a la demandante la imposición de una multa de $50.00 por cada factura comercial solicitada y no entregada. Solicitada una reconsideración por la demandante, el Secretario, ahora Sr. Rafael Picó, mediante carta de *13 de octubre de 1955* ratificó la imposición de las multas. En su comunicación a la demandante expresó el Secretario de Hacienda:

"A pesar de sus argumentos este Departamento sigue convencido de que la firma Alvarez & Pascual ha violado la Sección 65 al no suministrarnos los documentos requeridos, evitando así se procesara criminalmente a las personas que evadieron el pago de los arbitrios sobre los artículos introducidos en estos casos."

Con fecha de 14 de noviembre de 1955 la demandante radicó su demanda en el Tribunal Superior y en 31 de mayo de 1956 radicó una demanda enmendada. La posición de la demandante es la siguiente:

(1) "Considera que no tiene deber legal alguno de conservar y suplir al Departamento de Hacienda las facturas comerciales

a que se refiere la Sección 65, por razón de que cuando actúa como comisionista o representante su participación en la transacción comercial se limita a recibir órdenes para sus representados, y en su consecuencia, su obligación se reduce . . . a mantener el récord que exige el párrafo tercero de dicha Sección de Ley..." y

(2) "Alega la demandante en la alternativa que de interpretarse la Sección 65 de la Ley de Rentas Internas en el sentido de que impone a la demandante el deber de tener y conservar las copias de las facturas en relación con las cuales se han impuesto las multas administrativas en este caso, tal Sección, en ese aspecto, sería nula e inconstitucional por infringir la cláusula del debido proceso de ley . . . por estar dicha Sección 65, que es una de carácter penal, fraseada en términos vagos, indefinidos e inciertos."—Párrafos 8 y 9 de la demanda enmendada.

El tribunal a quo encontró correcta la primera de esas dos alegaciones y basándose en ello declaró con lugar la demanda. Al recurrir ante nos el Secretario de Hacienda señala que el tribunal de instancia cometió error de derecho al resolver que no procedían las multas administrativas y al determinar que la demandante no infringió la Sección 65 de la Ley de Rentas Internas. De manera que lo que hay planteado ante nosotros es el problema de cuál es la interpretación correcta del estatuto.

Veamos la citada Sección 65. Es ésta una sección extensa y tratándose, como se trata, de una ley de contribuciones, no es precisamente una página de Azorín, tersa y cristalina. No se escriben las leyes contributivas para deleite del espíritu, aunque una civilización bien organizada puede dedicar parte de su producto a ello. En aras de la objetividad y de la exactitud veamos la Sección 65 *in toto*:

"*Todo* fabricante, traficante, *representante, comisionista, agente,* o cualquiera otra persona que efectúe, *por su cuenta propia o por cuenta de sus representados*, operaciones de introducción, compra, venta, o traspaso, o que tenga en uso mercancía o artículos sujetos a impuestos o a derechos de licencia de rentas internas, de acuerdo con este subtítulo, *vendrá obligado a conservar en sus archivos,* organizados en forma razonable, a juicio

del Secretario de Hacienda, de Puerto Rico, y por un período no menor de cinco (5) años, a partir del día en que se efectuó o debió haberse efectuado el pago del impuesto, *las facturas comerciales,* los libros de contabilidad, los apuntes y cualesquiera otros documentos *relacionados con la introducción, compra,* fabricación, *venta,* uso o traspaso de dichos artículos.

Disponiéndose, que tal fabricante, traficante, representante, *comisionista, agente, o cualquiera otra persona afectada por esta sección,* vendrá obligada, al ser requerida para ello por oficiales del Departamento de Hacienda, a presentar *las mencionadas facturas comerciales,* libros de contabilidad y cualesquiera otros documentos relacionados con la introducción, compra, venta, traspaso, uso o enajenación en cualquiera otra forma, de los citados artículos; y vendrá igualmente obligada dicha persona a permitir que los citados funcionarios examinen éstos y tomen nota de cualquier asiento efectuado en los mismos, sin objetar al punteo o signado en la faz o al dorso de dichos documentos, libros o notas, mediante cualquier signo, cifra o seña convencional que adopten dichos funcionarios para, en caso necesario, identificar ante cualquier organismo administrativo o judicial, la autenticidad de los folios de contabilidad u otros documentos por ellos intervenidos, en el curso de cualquier investigación oficial; y a suministrar para asuntos oficiales, si ello fuere necesario, a juicio del Secretario de Hacienda, *las referidas facturas comerciales* originales, o copias certificadas de las mismas, así como de las órdenes recibidas de sus clientes para la introducción, compra, venta, uso o traspaso de mercancía tributable por este subtítulo.

Disponiéndose, además, que los traficantes, introductores o fabricantes de mercancía tributable, vendrán obligados a exigir de las personas a quienes compren el artículo, facturas auténticas que reflejen el costo cargado por cada artículo tributable; y en los casos de comisionistas, representantes o agentes que reciban órdenes para sus representados por mercancía o artículos para ser consignados a ellos mismos, o a sus clientes, o a la orden de los remitentes, vendrán obligados a mantener un récord en la forma que prescriba el Secretario de Hacienda, en el cual se haga constar el nombre de los clientes, dirección, fecha de la orden, número de la orden del cliente si lo hubiere, cantidad de mercancía ordenada, y costo en el punto de origen de la misma.

Disponiéndose, asimismo, que todo consignatario o dueño de cualquier clase de mercancía o artículo introducido en Puerto Rico que, a juicio del Secretario de Hacienda, no hubiere sido identificado por sus agentes de rentas internas, vendrá obligado a presentar las facturas comerciales correspondientes, en caso de ser requerido para ello, por los oficiales del Departamento de Hacienda, y a permitir igualmente, el examen de sus libros de contabilidad o de cualquier otro registro, libreta o récord donde dichas facturas comerciales hubieren sido registradas o anotadas.

La persona afectada por estas disposiciones, que presentare al Secretario de Hacienda o a sus oficiales autorizados facturas o documentos en forma de clave o por signos o símbolos sin que conste una descripción descifrada de los artículos o mercancía objeto de la operación de introducción, fabricación, venta, uso o traspaso, vendrá obligada a suministrar dicha descripción en términos corrientes, o a facilitar a los agentes de rentas internas el catálogo o documento auténtico que dio origen al uso de tal clave o signo, a opción del Secretario de Hacienda.

Disponiéndose, finalmente, que para los fines de esta sección, *cualquier persona que reciba órdenes sobre mercancía tributable* por este subtítulo por cuenta de sus representados en cualquier forma, habrá incurrido en operaciones de venta y por tanto *viene obligada a observar las precedentes disposiciones.*

Cualquier infracción a las disposiciones de esta sección constituirá delito menos grave, castigable con una multa no mayor de doscientos (200) dólares o cárcel por un término no mayor de treinta (30) días, o ambas penas, a discreción del tribunal; Disponiéndose, que el Secretario de Hacienda podrá, a su discreción, castigar dichas infracciones mediante la imposición de *una multa administrativa* que fluctuará entre cinco (5) y doscientos (200) dólares en cada caso." *13 L.P.R.A. sec. 1221."* (Bastardillas nuestras.) ▮▮▮

Alega la demandante que la obligación adicional de llevar un récord que el tercer párrafo de esa sección le impuso la relevó de la obligación de guardar y presentar las facturas; obligación que en forma explícita le imponen los párrafos primero, segundo y penúltimo de dicha disposición de ley. No tiene razón. Esa sección, como cualquier otra, hay que

leerla y considerarla completa, no fraccionadamente, y para encontrarle su significado hay que leerla—también como cualquier otra—a la luz de su propósito. (²)   Basta la más somera consideración de la Ley de Rentas Internas como pieza legislativa y de la relación que existe entre su sección 65 y el resto de la ley, para ver que el propósito de dicha sección es proveer los medios para hacer efectivo ese estatuto y para evitar el fraude.   Interpretar la sección 65 como pretende la demandante—relevándola del deber de guardar y presentar las facturas comerciales—frustraría el propósito de la misma. Eso precisamente es lo que ocurrió en este caso: al faltar las facturas el Secretario de Hacienda no pudo llevar a los tribunales a importadores que en su opinión habían evadido ilegalmente el pago de los arbitrios.   Véase la carta del Secretario Sr. Picó antes citada en esta opinión.   ▇

Se nos dice que se trata de una ley penal y que por consiguiente debemos interpretarla restrictivamente.   No es correcto.   Se trata de una ley de arbitrios; de la Ley de Rentas Internas.   Naturalmente, una ley que impone contribuciones tiene que contener sanciones; de otra manera para muy poco serviría.   Ya hace bastante tiempo que el punto fue resuelto por el Tribunal Supremo de los Estados Unidos.   En *Smythe* v. *Fiske,* (³) se dijo que las leyes que imponen contribuciones deben interpretarse de manera que puedan llevar a cabo su propósito y que sus disposiciones penales no son penales en el sentido de requerir una interpretación restrictiva.   Además, ya los tribunales rehusan hacer derecho a base de aforismos.   Los tribunales no pueden tener una posición *a priori* en relación con las cuestiones que tienen que resolver, sino que es su función considerar cada controversia por sus méritos.   A lo dicho en *Millán* v. *Caribe*

---

(²) *U. S.* v. *Whitridge,* 197 U.S. 135, 143; 49 L. ed. 696, 698 (Holmes) (1905) ; Llewellyn, *Remarks on the Theory of Appellate Decision,* 3 Vanderbilt Law Review 395, 400 (1950) ; Hellerstein, *State and Local Taxation,* 1952, p. 35.

(³) 90 U.S. 374, 380; 23 L. ed. 47, 49 (1874).

*Motors, Corp.,* 83 D.P.R. 494 (1961) y en *Banco* v. *Secretario de Hacienda,* 81 D.P.R. 442, 449 (1959) sobre la ya desacreditada práctica de frustrar el propósito de los estatutos al darle indebido peso a los cánones de interpretación, sumamos la opinión del Profesor De Castro, ([4]) citada con aprobación por Castán: "Las reglas jurídicas no tienen en sí valor jurídico propio, ni menos eficacia de fuente jurídica; son expresiones técnicas o recursos pedagógicos, y las más de las veces cobertera de la pereza del pensar jurídico y signo de decadencia de la ciencia del Derecho." ([5])  ▮

La verdad es que no hay regla de hermenéutica legal que impida a los jueces utilizar el sentido común al interpretar las leyes. *Roschen* v. *Ward.* ([6])  Frente a un estatuto que requiera interpretación no podemos tomar la posición del Rey que presidiendo el juicio (en el País de las Maravillas), al confrontarse con un escrito le dijo a Alicia "Si no tiene significado, nos ahorramos la mar de trabajo pues no tenemos que buscárselo."  Hay que presumir que leyes de las Asambleas Legislativas tienen significado y propósito y debemos buscárselos. ([7])  ▮

Luego de examinar detenidamente la transcripción de la evidencia estamos seguros de que la demandante conocía el significado y el propósito de la Sección 65. ([8])  Los diálogos que tuvieron lugar en el juicio entre el abogado del Secretario y el Vicepresidente y Tesorero de la demandante, y entre el mismo abogado y el Sr. Ulises Laboy corroboran el hecho de que la demandante trató de evitar—con éxito—que el Secretario obtuviera y examinara las facturas en cuestión.

---

([4]) Derecho Civil de España, 2a. ed., (1949) Tomo 1, pág. 433.

([5]) Castán, Derecho Civil Español, Común y Foral, Tomo 1, Vol. 1, novena ed., Madrid, 1955, pág. 330.

([6]) 279 U.S. 337, 339 (Holmes) (1929); 73 L.ed. 722, 728. V. también Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Columbia Law Review 527 y ss. (1947).

([7]) Frankfurter, Ibidem, p. 533–534.

([8]) Desde luego, la ignorancia de las leyes no excusa de su cumplimiento. Art. 2, Código Civil; *31 L.P.R.A. sec. 2.*

T. E. 26 y 60–61. También hemos considerado los argumentos presentados por la demandante en su alegato pero no nos convencen de que tiene razón. La demandante nos invita a interpretar el estatuto en forma irreal, frase a frase, haciendo caso omiso de la sustancia del mismo. No podemos hacerlo. El caso de *U. S.* v. *Cardiff* [9] en el cual hace énfasis la demandante es claramente inaplicable. Allí se acusó al jefe de una empresa de violar un estatuto al no permitir que unos inspectores del gobierno entrasen a inspeccionar su factoría. En apelación se revocó la convicción porque la propia ley bajo la cual se acusó a Cardiff disponía expresamente que antes de que los inspectores entrasen a las fábricas debían *solicitar y obtener permiso* de los dueños u operadores de las mismas para entrar a ellas. En ese caso cuando los inspectores solicitaron el permiso les fue negado. En nuestro caso la Sección 65 no deja al arbitrio de los comisionistas guardar y presentar las facturas al éstas serle requeridas por el Secretario de Hacienda. Nuestra ley claramente dispone que "Todo . . . representante, comisionista, agente . . . vendrá obligado a conservar por un período no menor de cinco años. . . las facturas comerciales" etc. La Sección 65 no provee para que el Secretario solicite y obtenga un permiso para requerir las facturas.

*Por las razones expuestas en esta opinión se revocará la sentencia del Tribunal Superior, Sala de San Juan, dictada en este caso de 5 de abril de 1957 y se sostendrán las multas administrativas impuestas por el Secretario de Hacienda.*