FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, recurrida.

Número: O-79-238    Resuelto: 30 de junio de 1981

*Laffitte & Domínguez,* abogados del recurrente; *Federico Díaz Ortiz, César A. Vélez* y *Gladys J. Ramos Rosario,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

El presente recurso fue originalmente consolidado con *F.S.E.* v. *J.R.T.,* 111 D.P.R. 505 (1981), opinión del día de hoy en la cual resolvimos que la Ley Núm. 103 de 28 de junio de 1969 (11 L.P.R.A. sec. 8 y ss.) confirió jurisdicción a la Junta de Relaciones del Trabajo sobre el Fondo del Seguro del Estado, tanto para los procedimientos de

prácticas ilícitas del trabajo como para la certificación de la unidad apropiada a los fines de la negociación colectiva. Aquí se plantea la misma cuestión jurisdiccional allí resuelta más otro error relacionado con hechos distintos que ameritan ser considerados en opinión aparte porque, como consecuencia de la distinción fáctica, la disposición final de recurso resulta también diferente.

En septiembre de 1975 el recurrente Fondo del Seguro del Estado emitió una convocatoria para cubrir el Puesto 356 de Oficial de Investigación y Seguros IV en la Oficina Regional de Mayagüez. Los requisitos de admisión para ocupar esta plaza consistían en que el aspirante debía estar ocupando un puesto de Oficial de Investigación y Seguros III u Oficial de Compensaciones y Seguros II, con doce meses de experiencia en la clase. La Certificación de Elegibles incluyó al querellado Áureo Sánchez Pérez, quien a la sazón ocupaba el puesto de Oficial de Investigación y Seguros II en Aguadilla, con 6 años de servicio en el Fondo, y al señor Edwin A. Hernández, quien desempeñaba un puesto de mayor jerarquía y salario como Funcionario Ejecutivo III, Jefe de la Sección de Formalización de Póliza en Mayagüez y con más de 19 de servicio en el Fondo. Un tercer aspirante, el señor Eddie Pérez Vazqueztell, se eliminó voluntariamente por no tener interés en la plaza. Según surge de la transcripción de la prueba, se seleccionó al señor Hernández en consideración a sus cualificaciones a la luz de los criterios de antigüedad, eficiencia y experiencia establecidos en el Convenio:

P . . . ¿Usted como entrevistador, y supongo evaluador de esas tres personas en sí, a primer nivel, le pregunto, por quién usted se decidió y por quién, por qué?

R. Yo me decidí por Edwin Hernández, en primer lugar tomando en consideración el factor "antigüedad", *ese fue el primer factor que utilicé para hacer mi selección. Además de eso, en base a lo que establece el convenio colectivo de responsabilidad del individuo, cómo [el individuo] se desempeña o se ha desempeñado en su puesto anterior, en la cooperación*

*del individuo, y, además, que el individuo estaba en ese momento desempeñando un puesto de alta responsabilidad. . . .* (Énfasis nuestro.)

Al enterarse de la designación del señor Hernández, el señor Áureo Sánchez solicitó al Presidente de la Hermandad su cooperación, a los fines de someter una querella ante el Comité de Querellas creado en el Convenio, expresándole que interesaba la plaza en cuestión, porque pensaba retirarse en los próximos meses y necesitaba un mayor sueldo para mejorar la pensión. La Hermandad rehusó tramitar la querella y le informó que estaba de acuerdo con la designación del señor Hernández. No conforme, Sánchez presentó una querella ante el Comité de Querellas, la cual fue desestimada al declararse el Comité sin jurisdicción por el fundamento de que el Convenio sólo permite al empleado presentar querella a través de la Hermandad. Acudió entonces Sánchez a la Junta de Relaciones del Trabajo, la que expidió sendas querellas contra el Fondo y la Hermandad, imputándoles una violación del Art. XII del Convenio Colectivo. Finalmente la Junta expidió la Decisión y Orden objeto de esta revisión en los siguientes términos:

1) Cesar y desistir de violar los términos del convenio colectivo que tengan negociado o que negocien especialmente en su Artículo XII.

2) Tomar la siguiente acción afirmativa que consideramos efectúa los propósitos de la Ley:

a) Conceder a Áureo Sánchez Pérez todos los beneficios correspondientes a la Plaza Núm. 356, retroactivo a la fecha y nombramiento del señor Edwin Hernández entendiéndose que el patrono debe responder en un 50% y la Unión en un 50%.

b) Fijar en sitios conspicuos del negocio y mantenerlos fijados por un período no menor de treinta (30) días consecutivos desde la fecha en que hayan sido fijados copias del aviso que se une.

Adviértase que la Junta ordenó que se concediera al

querellante Sánchez todos los beneficios correspondientes a la Plaza 356 retroactivos a la fecha del nombramiento del señor Hernández, pero no ordenó que se designara al querellante para cubrir dicha plaza, porque éste se acogió al retiro efectivo el 31 de diciembre de 1977, según había anunciado cuando hizo las gestiones para obtener el nombramiento.

La Junta rechazó la alegada violación del Art. VII del Convenio expresando:

> También se alega que la Hermandad violó el Artículo VII del convenio colectivo. No estamos de acuerdo.
>
> El Artículo VII, en su fase administrativa, (segundo paso) dispone que las "querellas" se continuarían procesando siempre y cuando que el presidente de la Hermandad determine que éstas eran meritorias. No podemos concluir que se violó este artículo por el hecho de que el presidente concluyera que la queja de Áureo Sánchez no era meritoria.
>
> Ciertamente la Hermandad no tenía la obligación de elevar todas las querellas más allá del segundo paso. Si hemos concluido que la situación aquí constituye una excepción a la norma de abstención administrativa es porque consideramos que el mecanismo interno resulta perjudicial para el trabajador. Independientemente de como use su discreción, el Presidente de la Hermandad no debe ejercer una función dual.

El Fondo interpuso el presente recurso apuntando cuatro errores, tres de los cuales se refieren a la jurisdicción de la Junta y que fueron resueltos afirmativamente en la opinión emitida en el día de hoy en el caso O-79-237. El cuarto, que es el que aquí consideramos, impugna la conclusión de la Junta al determinar que, bajo los hechos del caso, las partes violaron el Convenio Colectivo.

La Junta fundó su decisión en el último párrafo del Art. XII del Convenio, que aquí transcribimos:

> Los ascensos en el Fondo para empleados cubiertos por la unidad apropiada se harán tomando en consideración la *antigüedad, la eficiencia, puntualidad, experiencia, preparación académica y habilidad del empleado; dándole prefe-*

*rencia en igualdad de condiciones al empleado más antiguo en la agencia que reúna los requisitos antes mencionados.* La experiencia y eficiencia sustituirán la preparación académica para los efectos de este artículo, con excepción de aquellos puestos que requieran una licencia expedida por el gobierno para poder ejercer la profesión u oficio.

Para cubrir plazas vacantes en el Fondo la agencia circulará una convocatoria interna entre todos los empleados, enviando copia a la Hermandad dentro del término de veinticuatro (24) horas de haberse expedido la misma. Los empleados interesados en cubrir las vacantes llenarán y radicarán la correspondiente solicitud según se dispone en este convenio.

Cuando surja *una oportunidad de ascenso las partes darán la oportunidad en primer término a los empleados que ocupen puestos inmediatamente inferiores o similares de acuerdo con las normas que las partes acuerden.* (Énfasis nuestro.)

Entiende la Junta que este último párrafo controla la determinación sobre el ascenso. Su razonamiento es al efecto de que como el señor Hernández ocupaba un puesto de mayor jerarquía, no cualificaba para el "ascenso" a la Plaza 356, mientras que el señor Sánchez cualificaba porque ocupaba el puesto inmediatamente anterior. No estamos de acuerdo.

▄▄▄ La Junta incurre en el error de otorgar un valor absoluto al último párrafo del Art. XII, haciendo caso omiso de los criterios de antigüedad, eficiencia, puntualidad, experiencia, habilidad y preparación académica establecidos en el mismo articulado y reconocidos, además, en el Art. V del Convenio en lo relativo a ascensos, traslados, reasignaciones de puestos, labores internas y cesantía.[1] Al igual que en la interpretación de un estatuto, los términos de un convenio deben leerse en conjunto y armo-

---

[1] El Art. V, inciso 4, lee:

"Tanto el principio de mérito, la eficiencia y la antigüedad serán reconocidos en lo relativo a ascensos, traslados, reasignaciones de puestos, labores internas y cesantías."

nizarse con el fin de determinar la intención de las partes. *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.* 90 D.P.R. 739, 744 (1964); *Caballero* v. *Kogan,* 73 D.P.R. 666, 674 (1952). La Junta, por el contrario, aplicó literalmente la disposición que favorece a los empleados que ocupan puestos inmediatamente inferiores a la plaza vacante, sin tomar en consideración el resto del articulado. Ya en *Álvarez & Pascual, Inc.* v. *Srio. Hacienda,* 84 D.P.R. 482, 492 (1962), habíamos rechazado la metodología de hermenéutica legal de interpretar los casos en forma irreal, frase a frase, haciendo caso omiso de su sustancia. Es un principio fundamental que toda parte del convenio debe ser considerada para determinar el significado de cada una de sus partes. Ver en general, R. Elfren Bernier, *Aprobación e Interpretación de las Leyes de Puerto Rico*, México, 1963, págs. 187–188.

Los criterios de selección establecidos en el Convenio tienen un propósito dual: garantizar tanto el interés del patrono en cubrir las vacantes con el personal más idóneo como el interés de los empleados en la promoción en el empleo. La observación rigurosa de estos criterios de selección para el ascenso contribuye a evitar que entre en juego el favoritismo, el capricho del jefe, la presión externa e influencias extrañas en la buena administración de personal bajo el Convenio. Por supuesto, la antigüedad por sí sola, ni ninguno de los otros criterios considerados aisladamente puede garantizar la idoneidad. Este objetivo puede lograrse razonablemente cuando se consideran todos los criterios en conjunto y en su debida proporción.

El hecho de que aquí se tratara de un ascenso y que la convocatoria fuera redactada en esos términos no podía constituir un barrera infranqueable a la selección del señor Hernández para cubrir la vacante en la Plaza 356, si en la ponderación de los criterios de selección resultaba éste ser el más idóneo. Eliminarlo como candidato por el hecho de ocupar él una posición de mayor rango

resguardaría, sin duda alguna, el interés de los empleados que ocupan puestos inmediatamente inferiores en ser ascendidos, pero quebrantaría el interés legítimo del patrono —reconocido en el mismo articulado— de cubrir los puestos con el personal más idóneo.

Es este un caso poco común, pues usualmente los empleados no tienen interés en disminuir su rango en el sistema de personal, sino, por el contrario, en adelantarlo. El ascenso alienta este interés legítimo del empleado, así como el propósito de retener en el empleo a aquellos empleados más idóneos que ingresen por los grados inferiores. El descenso constituye propiamente una sanción disciplinaria, salvo en situaciones como la del caso de autos, en que es el propio empleado el que voluntariamente renuncia a una posición de rango superior y, por consideración de conveniencia personal, solicita ser designado en una plaza de inferior rango.

En adición, no hay constancia en los autos de que el Fondo o la Hermandad actuaran caprichosa, arbitraria o discriminatoriamente al cubrir la vacante de la Plaza 356. En consecuencia, la designación del señor Hernández para ocupar dicha vacante no constituye una práctica ilícita del trabajo, por lo que incidió la Junta de Relaciones del Trabajo al concluir lo contrario.

*Se dictará sentencia que revoque la Decisión y Orden de la Junta en este caso.*

Los Jueces Asociados Señores Rigau y Negrón García no intervinieron.