SENTENCIA
Comparece ante nos el Ledo. Luis M. Morales Tañón (el peticionario) para que revisemos una Sentencia dictada por el Tribunal de Apelaciones. Esta confirmó la Resolución emitida por la Oficial Examinadora de la Autoridad de Energía Eléctrica que sostuvo la adjudicación de la plaza de Presidente del Comité Permanente de Subastas B al Ing. Edgardo Vázquez Báez (el interventor) y, por ende, desestimó la Querella presentada por el peticionario.
*545 Por entender que la Autoridad de Energía Eléctrica (AEE o la recurrida) no observó el principio de mérito y que el peticionario era el candidato idóneo para ocupar la plaza, revocamos la determinación del tribunal apelativo intermedio. Veamos los hechos que dieron lugar a esta controversia.
I
La AEE cuenta con dos (2) Comités de Subastas: el Comité de Subastas A y el Comité Permanente de Subastas B. Estos Comités son “responsables por la pureza en los procesos de subasta desde la evaluación hasta su adjudicación, por el cumplimiento de los requisitos legales y la reglamentación interna aplicable, dentro de los límites de autoridad conferidos”.(1) En particular, el Comité Permanente de Subastas B (el Comité) está compuesto por no menos de cinco (5) miembros permanentes con experiencia en los campos de compras, ingeniería, legal o finanzas. Asimismo, uno de los miembros actúa como presidente del Comité.(2)
Para la fecha en cuestión, el peticionario llevaba diez (10) años como miembro del Comité y se había desempeñado como Presidente Interino de este en varias ocasiones. No obstante, la plaza de Presidente del Comité estuvo vacante desde enero de 2005 hasta el 15 de mayo de 2008, fecha cuando se extendió el nombramiento al interventor para cubrir la plaza en sustitución temporal. Cabe señalar que antes de que se designara al interventor, el peticionario ocupó esa plaza también en sustitución temporal.(3)
Así las cosas, la AEE publicó la Convocatoria Núm. 009-123G8-221 para la plaza de Presidente del Comité Perma *546 nente de Subastas B entre el 18 de julio y el 5 de agosto de 2008.(4) Esta plaza es de carrera e incluye entre sus funciones, “planificar, dirigir, combinar y supervisar todas las actividades relacionadas con la evaluación, revisión y adjudicación e impugnación de la subasta [...]”.(5) Los requisitos mínimos exigidos en la convocatoria fueron: poseer una Maestría en Administración de Empresas, Juris Doctor o Bachillerato en Ingeniería de una Universidad o colegio acreditado, así como ocho (8) años de experiencia en alguna de esas tres (3) áreas.
Luego de publicada la convocatoria, un Comité de Evaluación formuló cuatro (4) criterios para recomendar al candidato más idóneo: (1) experiencia administrativa a nivel ejecutivo; (2) experiencia en la evaluación de subastas; (3) experiencia en el proceso de compras, y (4) años de ex-periencia en la AEE e historial del empleado.(6) Además, estableció como factor de peso para el puesto los conocimientos técnicos de los candidatos. De igual forma, el Comité consideró necesaria la experiencia en evaluación de subastas pero concluyó que no era indispensable que la persona que ocupara la plaza tuviera experiencia en la etapa de adjudicación.(7)
Así las cosas, cinco (5) candidatos para la plaza fueron entrevistados por el Comité de Evaluación. Entre los entrevistados se encontraban el peticionario y el interventor. Ambos candidatos poseían los requisitos mínimos de educación y experiencia antes señalados.
Según se desprende del expediente, el peticionario tiene un Bachillerato en Ciencias y un grado de Juris Doctor. A la fecha de la solicitud, tenía dieciocho (18) años y cinco (5) meses de servicio en la AEE durante los que ocupó diversas *547 posiciones administrativas. Además, tenía catorce (14) años de experiencia relacionada en compras. Particularmente, el peticionario había fungido diez (10) años como miembro del Comité Permanente de Subastas B y llegó a ocupar la plaza de Presidente del Comité tanto en sustitución temporal como en ascenso. Igualmente, fue miembro de la Junta de Subastas de la Administración para el Financiamiento de la Infraestructura (AFI), y participó en la redacción y cambios al Reglamento de Subastas.(8)
Por su parte, el interventor posee un bachillerato y licencia en ingeniería eléctrica. Antes de su nombramiento, ocupaba una plaza de Ingeniero en la Central Costa Sur como Director del Sistema Eléctrico de esa dependencia.(9) A la fecha de la solicitud, tenía veintiún (21) años y nueve (9) meses de servicio en la AEE, y doce (12) años y seis (6) meses de experiencia relacionada con compras. Durante estos años, el interventor nunca realizó adjudicaciones de subastas, sino que su experiencia fue, principalmente, en la evaluación de subastas. Así, en el carácter de usuario(10) (o de Gerente de Proyectos que asistía a los usuarios), presentaba recomendaciones de las que se formulaban memorandos de recomendaciones técnicas para los dos (2) Comités de Subastas.
Finalmente, el Comité de Evaluación recomendó al interventor para la plaza, y el 4 de septiembre de 2008, la AEE extendió un nombramiento al interventor correspondiente a la plaza regular con efectividad el 1 de septiembre de 2008. Esto al concluir que el interventor “posee amplia *548 experiencia en la fase técnica, lo que lo capacita para establecer prioridades de conformidad con las necesidades de la Autoridad. Además, es el que tiene la mayor experiencia en supervisión de empleados profesionales y de la alta gerencia”.(11)
Así las cosas, el peticionario impugnó la adjudicación de la plaza al interventor conforme establece el “Procedimiento de Querellas para Empleados de Carrera No Unionados” de la AEE. Aunque el peticionario reconoció que tanto el interventor como él poseían los requisitos mínimos para ocupar el puesto, sostuvo que era el candidato más idóneo para ocupar la plaza por tener el mayor dominio y experiencia en la adjudicación de subastas. Esto al considerarse su educación, su experiencia administrativa, los años que llevaba como miembro del Comité, todas las ocasiones en las que había ejercido la plaza de Presidente Interino del Comité, y su experiencia en subastas dentro y fuera de la Autoridad (diez (10) años como miembro del Comité Permanente de Subastas B y casi un (1) año en la Junta de Subastas de la AFI). El peticionario sostuvo que la AEE tomó en consideración criterios subjetivos y no aplicó los elementos de idoneidad que son parte del principio de mérito que debe prevalecer en la selección o el nombramiento de empleados en el Gobierno. Igualmente, indicó que las determinaciones fueron irrazonables.(12)
Por su parte, la AEE argumentó que ambos candidatos cumplían con los requisitos mínimos de la plaza al momento de su publicación. No obstante, la determinación se redujo a cuál de los candidatos era el más idóneo según la discreción administrativa de la AEE que, a su vez, goza de presunción de legalidad y corrección. Señaló, además, que la acción administrativa ni los criterios utilizados fueron arbitrarios ni caprichosos y que nada impedía el diseño de *549 elementos o criterios cuantitativos y cualitativos para evaluar candidatos.
Luego de varios trámites procesales, el caso fue referido a la Oficial Examinadora, Leda. Berta Mainardi Peralta, quien celebró vistas los días 19 de diciembre de 2011 y 27 de enero de 2012. La Oficial Examinadora emitió una Resolución el 30 de marzo de 2014 en la que declaró “sin lugar” la impugnación de la plaza y concluyó que no encontró
[...] hechos, circunstancias ni indicios de irregularidad en el proceso de evaluación de los candidatos o que indiquen la existencia de arbitrariedad o discrimen por razones prohibidas en la selección. El querellante no estableció, mediante prueba, que la recomendación y nombramiento del Sr. Vázquez Báez se fundamentara en consideraciones ilegítimas ni contrarias al principio de mérito.(13)
Inconforme, el peticionario acudió ante el Tribunal de Apelaciones. El foro intermedio apelativo, mediante Sentencia dictada el 29 de agosto y notificada el 11 de septiembre de 2014, sostuvo las determinaciones de la Oficial Examinadora, pues los foros administrativos cuentan con una presunción de corrección que el peticionario no rebatió.
Después que la moción de reconsideración presentada fuera denegada, el peticionario acude ante nos y señaló el error siguiente:
Erró el Honorable Tribunal de Apelaciones, abusó de su discreción y actuó irrazonablemente al denegar la solicitud de [revisión judicial] y determinar que para la selección de la persona para ocupar la plaza impugnada de Presidente del Comité de Subastas B de la AEE se consideraron los principios de mérito y las cualidades de idoneidad, cuando claramente fueron aplicados elementos reglamentarios subjetivos y discrecionales de la AEE. Tal determinación se aleja del principio de mérito que ha de aplicarse en los casos de selección de puestos de carrera en el gobierno. Petición de certiorari, pág. 3.
*550 Examinado el recurso, concedimos a la parte recurrida un término para mostrar causa por la cual no debíamos expedir el recurso. Contando con el beneficio de la comparecencia de la parte recurrida, procedemos a resolver.
rH 1-H
A. La revisión judicial de decisiones administrativas
Las decisiones de los foros administrativos gozan de una presunción de regularidad y corrección dado a su experiencia y pericia. Por lo tanto, estas merecen gran deferencia por parte de los tribunales. González Segarra et al. v. CFSE, 188 DPR 252 (2013); OCS v. Universal, 187 DPR 164 (2012). No obstante, al revisar una decisión administrativa, el criterio rector debe ser la razonabilidad. Por lo tanto, nos corresponde verificar si la agencia actuó arbitraria o irrazonablemente, de forma que haya incurrido en un abuso de discreción. Trigo Margarida v. Junta Directores, 187 DPR 384 (2012).
Con ello en mente, el tribunal sostendrá las determinaciones de hecho de las decisiones administrativas cuando se basen en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.(14) Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Trigo Margarida v. Junta Directores, supra. Véase Ramírez v. Depto. de Salud, 147 DPR 901 (1999). Por ello, la parte afectada debe demostrar que existe otra prueba que sostenga que la actuación de la agencia no está fundamentada en evidencia sustancial o que reduzca el valor de la evidencia impugnada. González Segarra et al. v. CFSE, supra; OEG v. Santiago Guzmán, 188 DPR 215 (2013).
*551 En cuanto a las conclusiones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos.(15) No obstante, dará deferencia a sus interpretaciones y conclusiones en la medida que sean razonables. Así, la deferencia a la decisión administrativa cederá únicamente, (1) cuando no está basada en evidencia sustancial, (2) cuando el organismo administrativo ha errado en la aplicación o interpretación de la ley y (3) cuando ha mediado una actuación irrazonable o ilegal. González Segarra et al. v. CFSE, supra; OCS v. Universal, supra.
B. El principio de mérito
La Ley Núm. 184-2004, según enmendada, conocida como Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 LPRA see. 1461 et seq., establece como política pública la reafirmación del mérito como el principio rector del servicio público.(16)
El principio de mérito es exclusivo del sistema de personal del servicio público. Este postula que los empleados del Gobierno se seleccionen, adiestren, asciendan y retengan exclusivamente en consideración a sus méritos y capacidad, sin distinciones por razones de raza, color, sexo, nacimiento, edad, origen o condición social, por ideas políticas o religiosas, orientación sexual, identidad de género, por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, condición de veterano ni por impedimento físico o mental. Art. 2, Sec. 2.1 de la Ley Núm. 184-2004, supra. Véanse, además: González Segarra et al. v. CFSE, supra, pág. 280, citando a A. Cuevas Biret, La negociación colectiva y el sistema de mérito en Puerto Rico, San Juan, [s. Ed.], 1974, pág. 16; Díaz de Llovet v. Gobernador, 112 DPR 747 (1982). Además, el principio de mérito conlleva *552 que los más aptos e idóneos, según sus méritos y capacidades, sean los que sirvan al Gobierno de forma que se alcancen los más altos niveles de excelencia, eficiencia y productividad en el servicio público. Art. 2 de la Ley Núm. 184-2004, según enmendada, supra. Véase, además, Torres Solano v. P.R.T.C., 127 DPR 499 (1990).
Aunque la Ley Núm. 184-2004 excluye de su aplicación a aquellas corporaciones o instrumentalidades públicas o público-privadas que funcionan como empresas o negocios privados, como la AEE, estas están obligadas a adoptar reglamentos de personal que incorporen el principio de mérito a la administración de sus recursos humanos. Véase Art. 5, Sec. 5.3 de la Ley Núm. 184-2004 (3 LPRA sec. 146le). Véanse, además: Rosa Maisonet v. ASEM, 192 DPR 368 (2015); González Segarra et al. v. CFSE, supra.
En el descargo de esta obligación, la AEE aprobó el Reglamento de Personal de la Autoridad de Energía Eléctrica para Empleados de Carrera no Unionados y el Reglamento de Personal Gerencial en el Servicio de Carrera. Ambos Reglamentos incorporaron el principio de mérito. Por lo tanto, la AEE debe cumplir con el principio de mérito, según incorporado en su reglamentación y procedimientos internos.
Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos.
r—I HH h—I
En esencia, el peticionario argumenta que la AEE estaba obligada a aplicar los criterios de idoneidad y el principio de mérito para determinar a quién le correspondía la plaza. Señala que presentó evidencia sobre su preparación académica, experiencia, adiestramientos, habilidades y destrezas que lo posicionaba como el empleado idóneo para ocupar la plaza. De igual forma, indica que la AEE no evaluó en igualdad de condiciones ni consideró la totalidad de *553 los elementos que tenían ante sí,(17) sino que solo evaluó cuatro (4) criterios arbitrarios y caprichosos que no eran parte de los requisitos del puesto.
*554 Por el contrario, la AEE argumenta que ambos candidatos cumplían con los requisitos mínimos de la plaza, por lo que la determinación de cuál era el más idóneo era un asunto de la discreción y pericia administrativa. Para ello, el Comité de Evaluación utilizó cuatro (4) criterios de evaluación como aquellos de mayor importancia. Asimismo, determinó que era necesaria una persona con conocimiento de la fase técnica de la AEE para ocupar la plaza en cuestión y seleccionó al ingeniero Vázquez Báez.
Como expresáramos, las decisiones administrativas merecen gran deferencia de nuestra parte, por lo que debemos revisar bajo un criterio de razonabilidad que estas se sostengan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. De igual forma, es el peticionario quien debe demostrar que existe otra prueba que sostenga que la actuación de la agencia no *555 está fundamentada en evidencia sustancial o que reduzca el valor de la evidencia impugnada.
Al aplicar las disposiciones pertinentes de la ley, determinamos que el peticionario demostró que, de la totalidad de la prueba, era el candidato idóneo para ocupar la posición de Presidente del Comité Permanente de Subastas B. Veamos.
Ciertamente, tanto el peticionario como el interventor cumplían con los requisitos mínimos para ocupar la plaza. Los requisitos se limitaban a poseer cierto título académico y ocho (8) años de experiencia en una (1) de las tres (3) áreas antes indicadas. Tampoco dudamos de la competencia de uno u otro en sus respectivas áreas. No obstante, tras ambos candidatos exceder los requisitos mínimos para la plaza, la AEE seguía obligada por el principio de mérito y el ejercicio de su discreción administrativa se encontraba limitado por este.
Para esta convocatoria, la AEE formuló cuatro (4) criterios que dirigieron su selección del candidato más idóneo: (1) experiencia administrativa a nivel ejecutivo; (2) experiencia en la evaluación de subastas (mas determinó que no era indispensable la experiencia en la etapa de adjudicación, función medular que ejerce todo miembro del Comité y que suponía una parte significativa de la experiencia del peticionario); (3) experiencia en el proceso de compras, y (4) años de experiencia en la AEE e historial del empleado. En este punto cabe señalar que “la antigüedad por sí sola, ni ninguno de los otros criterios considerados aisladamente puede garantizar la idoneidad”, sino que estos deben considerarse en conjunto y en su debida proporción. F.S.E. v. J.R.T., 111 DPR 520, 525 (1981).
No obstante, al considerar estos criterios en conjunto y con la totalidad de la evidencia que consta en el expediente, el peticionario superaba al interventor en años de experiencia relacionada a compras, particularmente en la evaluación y adjudicación de subastas. Esto, pues había *556 sido miembro de la Junta de Subastas de la AFI, miembro del Comité Permanente de Subastas B por una década y actuado como Presidente Interino del Comité por periodos significativos. En total, el peticionario había hecho más de siete mil (7,000) adjudicaciones de subastas. Además, contaba con evaluaciones y valoraciones sobresalientes en el desempeño de estas funciones. Ciertamente, el interventor tenía tres (3) años más de servicio en la AEE, así como un (1) año y dos (2) meses más de experiencia administrativa a nivel ejecutivo que el peticionario, pero como señaláramos, estos criterios no pueden ser considerados aisladamente ni por sí solos garantizan la idoneidad de un candidato.
Por otro lado, la evaluación y adjudicación de subastas conlleva tanto un alto contenido técnico como legal. Es por ello que el Comité (como grupo colegiado que se nutre de la experiencia de sus miembros en los campos de compras, ingeniería, legal y finanzas) finalmente las adjudica según las prioridades establecidas por la AEE mediante Reglamento. Es decir, todos los miembros del Comité de Subastas participan en la adjudicación de las subastas, por lo que tanto el técnico como el abogado deben pasar juicio sobre estas.(18)
Por lo tanto, al examinar la totalidad de la evidencia que obra en el expediente, concluimos que la determinación administrativa no fue razonable. El peticionario demostró ser el candidato idóneo para ocupar la posición de Presidente del Comité Permanente de Subastas B.
Por los fundamentos antes expresados, expedimos el auto solicitado y se dicta una Sentencia que revoca el dictamen del Tribunal de Apelaciones.
Así lo pronunció el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez disintió y emitió la expresión siguiente:
*557 Disiento por considerar que no le corresponde a este Tribunal actuar como una súper junta revisora para revocar el dictamen de una oficial examinadora de la Autoridad de Energía Eléctrica. Contrario a lo que sostiene la mayoría en su Sentencia, quienes aspiraban a la plaza objeto del recurso estaban igualmente cualificados para el puesto, por lo tanto, no debemos intervenir con el criterio administrativo.
La Jueza Asociada Oronoz Rodríguez disintió con una opinión escrita, a la cual se unieron la Jueza Presidenta Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 Manual Administrativo de la Autoridad de Energía Eléctrica, Capítulo 500, Sec. 530.1.

 See. 2, Art. C(l) del Reglamento de Subastas Núm. 6646 de la Autoridad de Energía Eléctrica, Departamento de Estado, 25 de junio de 2003.

 Apéndice de la Petición de certiorari, pág. 126.

 La convocatoria estuvo vigente durante el período del 18 de julio hasta el 5 de agosto de 2008.

 Apéndice de la Petición de certiorari, pág. 133.

 íd., pág. 494.

 íd., págs. 133-134.

 Apéndice de la Petición de certiorari, págs. 116-117. “[E]n el aspecto disciplinario, el Sr. Vázquez Báez no poseía nada en su historial mientras que el Sr. Morales Tañón tenía algún historial disciplinario. Se trata de un proceso que culminó con un Acuerdo Transaccional entre el querellante y la AEE. Dicho acuerdo no fue el elemento determinante en tomo a la recomendación del Comité de Evaluación”. Apéndice de la Petición de certiorari, págs. 134-135.

 Apéndice de la Petición de certiorari, pág. 454.

 La Sec. 1, Art. D(51) del Reglamento de Subastas Núm. 6646, supra, define usuario como el “funcionario de la Autoridad que, entre otras cosas, solicita la compra de bienes o servicios”.

 Apéndice de la Petición de certiorari, pág. 496.

 Petición de certiorari, pág. 3.

 Apéndice de la Petición de certiorari, págs. 151-152.

 See. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, 3 LPRA see. 2175.

 íd.

 Véase González Segarra et al. v. CFSE, 188 DPR 252 (2013), para un recuento histórico legal de la ley de personal.

 En la trascripción de la vista administrativa de 27 de enero de 2012, Apéndice de la Petición de certiorari, págs. 363-367, están contenidas las siguientes declaraciones del Sr. Confesor Vega Maisonet, uno de los miembros del Comité de Evaluación de los candidatos a la plaza en cuestión:
“LCDO. CÉSAR ROSADO:
P. Eh, le voy a presentar el anejo 1 que es la Publicación de la Plaza Vacante. En los deberes esenciales del puesto, verifique si se señala qué, eh, número uno la persona planifica, dirige, combina, supervisa todas las actividades relacionadas con la evaluación, revisión, adjudicación e impugnación de la subasta.
“R. Sí.
“P. Y eso usted, ¿pero la adjudicación e impugnación de la subasta eso ustedes no lo, no lo, no lo evaluaron?
“R. No
“LCDO. CÉSAR ROSADO:
“P. ¿Evaluaron cuántas adjudicaciones habían hecho los miembros?
“R. No.
“P. No evaluaron las adjudicaciones. Eh, ¿usted evaluó que el señor Morales Tañón había fungido como Presidente del Comité de Subastas?
“R. Sí
“P. Evaluó eso.
“R. Ujum.
“P. ¿Y evaluó que había, ... ? ¿Dónde está esa infor, [sic] dónde surge eso de que usted evaluó eso?
“R. Aquí, en el desto, en el Memo de, de Adjudicación de Plaza, de Puesto.
“P. Ajá.
“R. Aquí lee, su experiencia en el proceso de compra es de catorce años, principalmente por ocupar de Jefe de División de Protección Ambiental y miembro del Comité de Subastas.
“P. Y, por eso, usted habla aquí de que evaluaciones ...
“LCDO. CÉSAR ROSADO:
“P. Y dice, posee un [Juris Doctor] y cuenta con dieciocho años y su experiencia en el proceso de compra, ¿usted dice? ¿Pero no habla de adjudicación en subastas?
“R. No, no.
“P. E inclusive, ¿en ningún momento señala que fue Presidente del Comité de Subastas?
“R. No, no se señala.
“P. O sea, ¿Qué [sic] eso no se tomó en consideración?
“R. No.
“P. Y se tomó, ¿y tampoco se tomó en consideración que durante ese tiempo que él fue miembro del Comité de Subastas y fue Presidente Interino del Comité de Subastas tuvo, eh, evaluaciones de excelencia?
“R. No, no se tomó en cuenta.
“P. ¿Y tampoco tomaron en consideración que el señor Luis Morales Tañón fue supervisor del Departamento de Servicios Generales Especializados por dos años?
“R. No.
*554 “P. No se tomó en consideración. ¿Y qué [sic] a su cargo tenía sobre 40 personas supervisadas?
“R. No, no se tomó en consideración.
“P. ¿Y tampoco se tomó en consideración que fue él, que el señor Morales Tañón fue miembro de la Junta de Subastas de la Autoridad para el Financiamiento de la Infraestructura?
“R. No, AFI.
“P. Eso no se tomó en consideración. ¿Y tampoco se tomó en consideración que el señor Morales Tañón había adjudicado más de siete mil subastas versus el señor a la fecha de evaluación que no había adjudicado ninguna o por lo menos mucho menos?
“R. No.
“P. ¿Esa información ustedes no la tenían, no se la habían provisto?
“R. No.
“P. Le pregunto, si en esa información usted la hubiese tenido ahora, ¿usted hubiese re-evaluado esa determinación? ¿La determinación que tomó?
“R. Sí.
“P. Posiblemente el señor, el candidato más idóneo sería Luis Morales Tañón según la información nueva que tenemos, ¿sí?
“R. Sí.”.
Aunque la Oficial Examinadora reconoció que durante el curso del testimonio del señor Vega Maisonet surgieron elementos de aparente inconsistencia sobre los elementos considerados por el Comité de Evaluación, concluyó que el Comité de Evaluación examinó y sopesó el historial, experiencia y conocimientos del peticionario y de todos los candidatos. No obstante, la Oficial Examinadora determinó que el que el peticionario fungiera como Presidente del Comité, el número de subastas que adjudicara y las evaluaciones sobresalientes que recibiera, entre otros elementos, no fueron suficientes para que el Comité de Evaluación decidiera seleccionar al peticionario en vez de al interventor al comparar ambos candidatos. Apéndice de la Petición de certiorari, pág. 136.

 Apéndice Petición de certiorari, pág. 131.