EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis M. Morales Tañón<br><br>Peticionario<br><br>v.<br><br>Autoridad de Energía Eléctrica<br><br>Recurrido<br><br>Edgardo Vázquez Báez<br><br>Interventor | Certiorari<br><br>2015 TSPR 103<br><br>193 DPR ____ |

Número del Caso:     CC-2014-873

Fecha: 23 de julio de 2015

Tribunal de Apelaciones:

    Región Judicial de San Juan

Abogado de la Parte Peticionaria:

    Lcdo. César Rosado Ramos

Abogada de la Parte Recurrida:

    Lcda. Marilia Acevedo Torres

Materia: Sentencia y Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Luis M. Morales Tañón<br><br>    Peticionario<br><br>        v.<br><br>Autoridad de Energía Eléctrica<br><br>    Recurrido<br><br>Edgardo Vázquez Báez<br><br>    Interventor | CC-2014-873 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 23 de julio de 2015.

Comparece ante nos el Lcdo. Luis M. Morales Tañón (el peticionario) para que revisemos una Sentencia dictada por el Tribunal de Apelaciones. Esta confirmó la Resolución emitida por la Oficial Examinadora de la Autoridad de Energía Eléctrica que sostuvo la adjudicación de la plaza de Presidente del Comité Permanente de Subastas B al Ing. Edgardo Vázquez Báez (el interventor) y, por ende, desestimó la Querella presentada por el peticionario.

Por entender que la Autoridad de Energía Eléctrica (AEE o el recurrido) no observó el principio de mérito y que el peticionario era el candidato idóneo para ocupar la plaza, revocamos la determinación del tribunal apelativo

intermedio. Veamos los hechos que dieron lugar a esta controversia.

**I**

La AEE cuenta con dos (2) Comités de Subastas: el Comité de Subastas A y el Comité Permanente de Subastas B. Estos Comités son "responsables por la pureza en los procesos de subasta desde la evaluación hasta su adjudicación, por el cumplimiento de los requisitos legales y la reglamentación interna aplicable, dentro de los límites de autoridad conferidos".[1]

En particular, el Comité Permanente de Subastas B (el Comité) está compuesto por no menos de cinco (5) miembros permanentes con experiencia en los campos de compras, ingeniería, legal o finanzas. Asimismo, uno de los miembros actúa como presidente del Comité.[2]

Para la fecha en cuestión, el peticionario llevaba diez (10) años como miembro del Comité y se había desempeñado como Presidente Interino de este en varias ocasiones. No obstante, la plaza de Presidente del Comité estuvo vacante desde enero de 2005 hasta el 15 de mayo de 2008, fecha en que se extendió nombramiento al interventor para cubrir la plaza en sustitución temporal. Cabe señalar que antes de que

---

[1] Manual Administrativo de la Autoridad de Energía Eléctrica, Capítulo 500, Sec. 530.1.
[2] Secc. 2, Art. C(1) del Reglamento de Subastas Núm. 6646 de la Autoridad de Energía Eléctrica, Departamento de Estado, 25 de junio de 2003.

se designara al interventor, el peticionario ocupó esa plaza también en sustitución temporal.[3]

Así las cosas, la AEE publicó la Convocatoria Núm. 009-123G8-221 para la plaza de Presidente del Comité Permanente de Subastas B entre el 18 de julio al 5 de agosto de 2008.[4] Esta plaza es una de carrera e incluye entre sus funciones "planificar, dirigir, combinar y supervisar todas las actividades relacionadas con la evaluación, revisión y adjudicación e impugnación de la subasta".[5] Los requisitos mínimos exigidos en la convocatoria fueron: poseer una Maestría en Administración de Empresas, Juris Doctor o Bachillerato en Ingeniería de una Universidad o colegio acreditado, así como ocho (8) años de experiencia en alguna de esas tres (3) áreas.

Luego de publicada la convocatoria, un Comité de Evaluación formuló cuatro (4) criterios para recomendar al candidato más idóneo: (1) experiencia administrativa a nivel ejecutivo; (2) experiencia en la evaluación de subastas; (3) experiencia en el proceso de compras, y (4) años de experiencia en la AEE e historial del empleado.[6] Además, estableció como factor de peso para el puesto los conocimientos técnicos de los candidatos. De igual forma, el Comité consideró necesaria la experiencia en evaluación de subastas pero concluyó que no era indispensable que la

---

[3] Apéndice Petición de *Certiorari*, pág. 126.
[4] La convocatoria tuvo lugar durante el período del 18 de julio al 5 de agosto de 2008.
[5] Apéndice Petición de *Certiorari*, pág. 133.
[6] Apéndice Petición de *Certiorari*, pág. 494.

CC-2014-873

persona que ocupara la plaza tuviera experiencia en la etapa de adjudicación.[7]

Así las cosas, cinco (5) candidatos para la plaza fueron entrevistados por el Comité de Evaluación. Entre los entrevistados se encontraban el peticionario y el interventor. Ambos candidatos poseían los requisitos mínimos de educación y experiencia antes señalados.

Según se desprende del expediente, el peticionario tiene un Bachillerato en Ciencias y un grado de *Juris Doctor*. A la fecha de la solicitud, tenía dieciocho (18) años y cinco (5) meses de servicio en la AEE durante los que ocupó diversas posiciones administrativas. Además, tenía catorce (14) años de experiencia relacionada en compras. **Particularmente, el peticionario había fungido diez (10) años como miembro del Comité Permanente de Subastas B y llegó a ocupar la plaza de Presidente del Comité tanto en sustitución temporal como en ascenso.** Igualmente, fue miembro de la Junta de Subastas de la Administración para el Financiamiento de la Infraestructura (AFI) y participó en la redacción y cambios al Reglamento de Subastas. [8]

Por su parte, el interventor posee un bachillerato y licencia en ingeniería eléctrica. Antes de su nombramiento el interventor ocupaba una plaza de Ingeniero en la Central Costa Sur como Director del Sistema Eléctrico de esa

---

[7] Apéndice Petición de *Certiorari*, págs. 133-134.

[8] Apéndice Petición de *Certiorari*, págs. 116-117. "[E]n el aspecto disciplinario, el Sr. Vázquez Báez no poseía nada en su historial mientras que el Sr. Morales Tañón tenía algún historial disciplinario. Se trata de un proceso que culminó con un Acuerdo Transaccional entre el querellante y la AEE. Dicho acuerdo no fue el elemento determinante en torno a la recomendación del Comité de Evaluación". Apéndice Petición de *Certiorari*, págs. 134-135.

dependencia.[9] A la fecha de la solicitud, tenía veintiún (21) años y nueve (9) meses de servicios en la AEE y doce (12) años y seis (6) meses de experiencia relacionada en compras. Durante estos años el interventor nunca realizó adjudicaciones de subastas, sino que su experiencia era principalmente en la evaluación de subastas. Así, en el carácter de usuario[10] (o de Gerente de Proyectos que asistía a los usuarios) presentaba recomendaciones de las que se formulaban memorandos de recomendaciones técnicas para los dos (2) Comités de Subastas.

Finalmente, el Comité de Evaluación recomendó al interventor para la plaza, y el 4 de septiembre de 2008 la AEE extendió nombramiento al interventor correspondiente a la plaza regular con efectividad el 1 de septiembre de 2008. Esto al concluir que el interventor "posee amplia experiencia en la fase técnica, lo que lo capacita para establecer prioridades de conformidad con las necesidades de la Autoridad. Además, es el que tiene la mayor experiencia en supervisión de empleados profesionales y de alta gerencia".[11]

Así las cosas, el peticionario impugnó la adjudicación de la plaza al interventor conforme establece el "Procedimiento de Querellas para Empleados de Carrera No Unionados" de la AEE. Aunque el peticionario reconoció que

---

[9] Apéndice Petición de *Certiorari*, pág. 454.
[10] La Secc. 1, Art. D(51) del Reglamento de Subastas Núm. 6646, supra, define usuario como el "funcionario de la Autoridad que, entre otras cosas, solicita la compra de bienes o servicios".
[11] Apéndice Petición de *Certiorari*, pág. 496.

tanto el interventor como él poseían los requisitos mínimos para ocupar el puesto, sostuvo que era el candidato más idóneo para ocupar la plaza por tener el mayor dominio y experiencia en la adjudicación de subastas. Esto al considerarse su educación, su experiencia administrativa, los años que llevaba como miembro del Comité, todas las ocasiones que había ejercido la plaza de Presidente Interino del Comité y su experiencia en subastas dentro y fuera de la Autoridad (diez (10) años como miembro del Comité Permanente de Subastas B y casi un (1) año en la Junta de Subastas de la AFI. El peticionario sostuvo que la AEE tomó en consideración criterios subjetivos y no aplicó los elementos de idoneidad que son parte del principio de mérito que debe prevalecer en la selección o nombramiento de empleados en el Gobierno. Igualmente indicó que las determinaciones fueron irrazonables.[12]

Por su parte, la AEE argumentó que ambos candidatos cumplían con los requisitos mínimos de la plaza al momento de su publicación. No obstante, la determinación se redujo a cuál de los candidatos era el más idóneo según la discreción administrativa de la AEE que, a su vez, goza de presunción de legalidad y corrección. Señaló, además, que la acción administrativa ni los criterios utilizados fueron arbitrarios ni caprichosos y que nada impedía el diseño de elementos o criterios cuantitativos y cualitativos para evaluar candidatos.

---

[12] Petición de *Certiorari*, pág. 3.

Luego de varios trámites procesales, el caso fue referido a la Oficial Examinadora, Lcda. Berta Mainardi Peralta, quien celebró vistas los días 19 de diciembre de 2011 y 27 de enero de 2012. La Oficial Examinadora emitió una Resolución el 30 de marzo de 2014 en la que declaro sin lugar la impugnación de la plaza y concluyó que no encontró:

> … hechos, circunstancias ni indicios de irregularidad en el proceso de evaluación de los candidatos o que indiquen la existencia de arbitrariedad o discrimen por razones prohibidas en la selección. El querellante no estableció, mediante prueba, que la recomendación y nombramiento del Sr. Vázquez Báez se fundamentara en consideraciones ilegítimas ni contrarias al principio de mérito.[13]

Inconforme, el peticionario acudió ante el Tribunal de Apelaciones. El foro intermedio apelativo, mediante Sentencia dictada el 29 de agosto y notificada el 11 de septiembre de 2014, sostuvo las determinaciones de la Oficial Examinadora pues los foros administrativos cuentan con una presunción de corrección que no fue rebatida por el peticionario.

Luego de que la moción de reconsideración presentada fuera denegada, el peticionario acude ante nos y señaló el error siguiente:

> Erró el Honorable Tribunal de Apelaciones, abusó de su discreción y actuó irrazonablemente al denegar la solicitud de [revisión judicial] y determinar que para la selección de la persona para ocupar la plaza impugnada de Presidente del Comité de Subastas B de la AEE se consideraron los principios de mérito y las cualidades de idoneidad, cuando claramente fueron aplicados elementos reglamentarios subjetivos y

---

[13] Apéndice Petición de *Certiorari*, págs. 151-152.

> discrecionales de la AEE. Tal determinación se aleja del principio de mérito que ha de aplicarse en los casos de selección de puestos de carrera en el gobierno.

Examinado el recurso, concedimos a la parte recurrida un término para mostrar causa por la cual no debíamos expedir el recurso. Contando con el beneficio de la comparecencia de la parte recurrida, procedemos a resolver.

**II**

**A. La revisión judicial de decisiones administrativas**

Las decisiones de los foros administrativos gozan de una presunción de regularidad y corrección dado a su experiencia y pericia. Por lo tanto, estas merecen gran deferencia por parte de los tribunales. *González Segarra v. CFSE*, 188 DPR 252 (2013); *OCS v. Universal*, 187 DPR 164 (2012).

No obstante, al revisar una decisión administrativa, el criterio rector debe ser la razonabilidad. Por lo tanto, nos corresponde verificar si la agencia actuó arbitraria o irrazonablemente, de forma que haya incurrido en un abuso de discreción. *Trigo Margarida v. Junta de Directores*, 187 D.P.R. 384 (2012).

Con ello en mente, las determinaciones de hechos de las decisiones administrativas se sostendrán por el tribunal cuando se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[14] Evidencia sustancial es aquella evidencia relevante que una

---

[14] Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 2175.

CC-2014-873

mente razonable podría aceptar como adecuada para sostener una conclusión. *Id.*; *Ramírez v. Depto. de Salud*, 147 D.P.R. 901 (1999). Por ello, la parte afectada debe demostrar que existe otra prueba que sostenga que la actuación de la agencia no está fundamentada en evidencia sustancial o que reduzca el valor de la evidencia impugnada. *González Segarra v. CFSE*, supra; *OEG v. Santiago Guzmán*, 188 D.P.R. 215 (2013).

En cuanto a las conclusiones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos.[15] No obstante, dará deferencia a sus interpretaciones y conclusiones en la medida que sean razonables.

Así, la deferencia a la decisión administrativa cederá únicamente (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación o interpretación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. *González Segarra v. CFSE*, supra; *OCS v. Universal*, supra.

**B. El principio de mérito**

La Ley Núm. 184-2004, según enmendada, conocida como Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 LPRA sec. 1461 *et seq.*, establece como política pública la reafirmación del mérito como el principio rector del servicio público.[16]

---

[15] *Id.*

[16] Véase *González Segarra et al. v. CFSE*, 188 DPR 252 (2013), para un recuento histórico legal de la Ley de Personal.

El principio de mérito es exclusivo del sistema de personal del servicio público. Este postula que los empleados del Gobierno se seleccionen, adiestren, asciendan y retengan exclusivamente en consideración a sus méritos y capacidad, sin distinciones por razones de raza, color, sexo, nacimiento, edad, origen o condición social, por ideas políticas o religiosas, orientación sexual, identidad de género, por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, condición de veterano, ni por impedimento físico o mental. Art. 2 de la Ley Núm. 184-2004, *supra*. Véanse además, *González Segarra et al. v. CFSE*, supra, pág. 280, citando a A. Cuevas Viret, *La negociación colectiva y el sistema de mérito en Puerto Rico*,

San Juan, [s. Ed.], 1974, pág. 16; *Díaz de Llovet v. Gobernador,* 112 DPR 747 (1982). Además, el principio de mérito conlleva que los más aptos e idóneos, según sus méritos y capacidades, sean los que sirvan al Gobierno de forma que se alcancen los más altos niveles de excelencia, eficiencia y productividad en el servicio público. Art. 2 de la Ley Núm. 184-2004, según enmendada. Véase además, *Torres Solano v. P.R.T.C.*, 127 DPR 499 (1990).

Aunque la Ley Núm. 184-2004 excluye de su aplicación a aquellas corporaciones o instrumentalidades públicas o público-privadas que funcionan como empresas

o negocios privados, como la AEE, estas están obligadas a adoptar reglamentos de personal que incorporen el principio de mérito a la administración de sus recursos humanos. Véase, Art. 5, Sec. 5.3 de la Ley Núm. 184-2004, 3 LPRA sec. 1461e. Véase además, *Rosa Maisonet v. ASEM*, res. el 27 de febrero de 2015, 192 DPR __ (2015), 2015 TSPR 19; *González Segarra v. CFSE*, supra.

En el descargo de esta obligación, la AEE aprobó el *Reglamento de Personal de la Autoridad de Energía Eléctrica para Empleados de Carrera no Unionados* y el *Reglamento de Personal Gerencial en el Servicio de Carrera*. Ambos Reglamentos incorporaron el principio de mérito. Por lo tanto, la AEE debe cumplir con el principio de mérito según incorporado en su reglamentación y procedimientos internos.

Dentro del marco jurídico antes enunciado procedamos a resolver la controversia de autos.

**III**

En esencia, el peticionario argumenta que la AEE estaba obligada a aplicar los criterios de idoneidad y el principio de mérito para determinar a quién le correspondía la plaza. Señala que presentó evidencia sobre su preparación académica, experiencia, adiestramientos, habilidades y destrezas que lo posicionaba como el empleado idóneo para ocupar la plaza. De igual forma, indica que la AEE no evaluó en igualdad de condiciones ni consideró la totalidad de los

elementos que tenían ante sí,[17] sino que la AEE solo evaluó cuatro (4) criterios arbitrarios y caprichosos que no eran parte de los requisitos del puesto.

---

[17] De la trascripción de la vista administrativa de 27 de enero de 2012, Apéndice Petición de *Certiorari*, págs. 37-41, se desprenden las siguientes declaraciones del Sr. Confesor Vega Maisonet, uno de los miembros del Comité de Evaluación para evaluar a los candidatos a la plaza en cuestión:

LCDO. CÉSAR ROSADO:
P. Eh, le voy a presentar el anejo 1 que es la Publicación de la Plaza Vacante. En los deberes esenciales del puesto, verifique si se señala qué, eh, número uno la persona planifica, dirige, combina, supervisa todas las actividades relacionadas con la evaluación, revisión, adjudicación e impugnación de la subasta.

R. Sí.

P. Y eso usted, ¿pero la adjudicación e impugnación de la subasta eso ustedes no lo, no lo, no lo evaluaron?

R. No
…

LCDO. CÉSAR ROSADO:

P. ¿Evaluaron cuántas adjudicaciones habían hecho los miembros?

R. No.

P. No evaluaron las adjudicaciones. Eh, ¿usted evaluó que el señor Morales Tañón había fungido como Presidente del Comité de Subastas?

R. Sí

P. Evaluó eso.

R. Ujum.

P. ¿Y evaluó que había,…? ¿Dónde está esa infor, dónde surge eso de que usted evaluó eso?

R. Aquí, en el desto, en el Memo de, de Adjudicación de Plaza, de Puesto.

P. Ajá.

R. Aquí lee, su experiencia en el proceso de compra es de catorce años, principalmente por ocupar de Jefe de División de Protección Ambiental y miembro del Comité de Subastas.

P. Y, por eso, usted habla aquí de que evaluaciones…
…

LCDO. CÉSAR ROSADO:

P. Y dice, posee un [Juris Doctor] y cuenta con dieciocho años y su experiencia en el proceso de compra, ¿usted dice? ¿Pero no habla de adjudicación en subastas?

R. No, no.

P. E inclusive, ¿en ningún momento señala que fue Presidente del Comité de Subastas?

R. No, no se señala.

P. O sea, ¿Qué eso no se tomó en consideración?

R. No.

P. Y se tomó, ¿y tampoco se tomó en consideración que durante ese tiempo que él fue miembro del Comité de Subastas y fue Presidente Interino del Comité de Subastas tuvo, eh, evaluaciones de excelencia?

R. No, no se tomó en cuenta.

P. ¿Y tampoco tomaron en consideración que el señor Luis Morales Tañón fue supervisor del Departamento de Servicios Generales Especializados por dos años?
…

R. No.

P. No se tomó en consideración. ¿Y qué a su cargo tenía sobre 40 personas supervisadas?

R. No, no se tomó en consideración.

P. ¿Y tampoco se tomó en consideración que fue él, que el señor Morales Tañón fue miembro de la Junta de Subastas de la Autoridad para el Financiamiento de la Infraestructura?

R. No, AFI.

P. Eso no se tomó en consideración. ¿Y tampoco se tomó en consideración que el señor Morales Tañón había adjudicado más de siete mil subastas versus el señor a la fecha de evaluación que no había adjudicado ninguna o por lo menos mucho menos?

R. No.

P. ¿Esa información ustedes no la tenían, no se la habían provisto?

R. No.

P. Le pregunto, si en esa información usted la hubiese tenido ahora, ¿usted hubiese re-evaluado esa determinación? ¿La determinación que tomó?

R. Sí.

P. Posiblemente el señor, el candidato más idóneo sería Luis Morales Tañón según la información nueva que tenemos, ¿sí?

R. Sí.

Aunque la Oficial Examinadora reconoció que durante el curso del testimonio del señor Vega Maisonet surgieron elementos de aparente inconsistencia sobre los elementos considerados por el Comité de Evaluación, concluyó que el Comité de Evaluación examinó y sopesó el historial, experiencia y conocimientos del peticionario y de todos los candidatos. No obstante, la Oficial Examinadora determinó que el que el

Por el contrario, la AEE argumenta que ambos candidatos cumplían con los requisitos mínimos de la plaza, por lo que la determinación de cuál era el más idóneo era un asunto de la discreción y pericia administrativa. Para ello, el Comité de Evaluación utilizó cuatro (4) criterios de evaluación como aquellos de mayor importancia. Asimismo, determinó que era necesaria una persona con conocimiento de la fase técnica de la AEE para ocupar la plaza en cuestión y seleccionó al ingeniero Vázquez Báez.

Como expresáramos, las decisiones administrativas merecen gran deferencia de nuestra parte por lo que debemos revisar bajo un criterio de razonabilidad que estas se sostengan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. De igual forma, es el peticionario quien debe demostrar que existe otra prueba que sostenga que la actuación de la agencia no está fundamentada en evidencia sustancial o que reduzca el valor de la evidencia impugnada.

Al aplicar las disposiciones pertinentes de la Ley determinamos que el peticionario demostró que, de la totalidad de la prueba, era el candidato idóneo para ocupar la posición de Presidente del Comité Permanente de Subastas B. Veamos.

Ciertamente, tanto el peticionario como el interventor cumplían con los requisitos mínimos para ocupar la plaza.

---

peticionario fungiera como Presidente del Comité, el número de subastas que adjudicara y las evaluaciones sobresalientes que recibiera, entre otros elementos, no fueron suficientes para que el Comité de Evaluación decidiera seleccionar al peticionario en vez de al interventor al comparar ambos candidatos. Apéndice Petición de *Certiorari*, pág. 136.

CC-2014-873

Los requisitos se limitaban a poseer cierto título académico y ocho (8) años de experiencia en una (1) de las tres (3) áreas antes indicadas. Tampoco dudamos en la competencia de uno u otro en sus respectivas áreas. No obstante, tras ambos candidatos exceder los requisitos mínimos para la plaza, la AEE seguía obligada por el principio de mérito y el ejercicio de su discreción administrativa se encontraba limitado por este.

Para esta convocatoria, la AEE formuló cuatro (4) criterios que dirigieron su selección del candidato más idóneo: (1) experiencia administrativa a nivel ejecutivo; (2) experiencia en la evaluación de subastas (mas determinó que **no** era indispensable la experiencia en la etapa de adjudicación, función medular que ejerce todo miembro del Comité y que suponía una parte significativa de la experiencia del peticionario); (3) experiencia en el proceso de compras, y (4) años de experiencia en la AEE e historial del empleado. En este punto cabe señalar que "[l]a antigüedad por sí sola, ni ninguno de los otros criterios considerados aisladamente puede garantizar la idoneidad", sino que estos deben considerarse en conjunto y en su debida proporción. *F.S.E. v. J.R.T.*, 111 D.P.R. 520, 525 (1981).

No obstante, al considerar estos criterios en conjunto y con la totalidad de la evidencia que consta en el expediente, el peticionario superaba al interventor en años de experiencia relacionada en compras, particularmente en la evaluación y adjudicación de subastas. Esto pues había

CC-2014-873

sido miembro de la Junta de Subastas de la AFI, miembro del Comité Permanente de Subastas B por una década y actuado como Presidente Interino del Comité por periodos significativos. En total, el peticionario había hecho más de siete mil (7,000) adjudicaciones de subastas. Además, el peticionario contaba con evaluaciones y valoraciones sobresalientes en el desempeño de estas funciones. Ciertamente el interventor tenía tres (3) años más de servicio en la AEE, así como un año (1) y dos (2) meses más de experiencia administrativa a nivel ejecutivo que el peticionario, pero como señaláramos estos criterios no pueden ser considerados aisladamente ni por sí solos garantizan la idoneidad de un candidato.

Por otro lado, la evaluación y adjudicación de subastas conlleva tanto un alto contenido técnico como legal. Es por ello que el Comité (como grupo colegiado que se nutre de la experiencia de sus miembros en los campos de compras, ingeniería, legal y finanzas) finalmente adjudica las mismas según las prioridades establecidas por la AEE mediante Reglamento. Es decir, todos los miembros del Comité de Subastas participan en la adjudicación de las subastas, por lo que tanto el técnico como el abogado deben pasar juicio sobre estas.[18]

Por lo tanto, al examinar la totalidad de la evidencia que obra en el expediente, concluimos que la determinación administrativa no fue razonable. El peticionario demostró

---

[18] Apéndice Petición de *Certiorari*, pág. 131.

ser el candidato idóneo para ocupar la posición de Presidente del Comité Permanente de Subastas B.

Por los fundamentos antes expresados, expedimos el auto solicitado y se dicta Sentencia revocando el dictamen del Tribunal de Apelaciones.

Así lo pronunció el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disintió y emitió la expresión siguiente:

> "La Juez Asociada señora Rodríguez Rodríguez disiente por considerar que no le corresponde a este Tribunal actuar como una súper junta revisora para revocar el dictamen de una oficial examinadora de la Autoridad de Energía Eléctrica. Contrario lo que sostiene la mayoría en su Sentencia, quienes aspiraban a la plaza objeto del recuso estaban igualmente cualificados para el puesto, no debemos por lo tanto intervenir con el criterio administrativo."

La Jueza Asociada Oronoz Rodríguez disintió con opinión escrita a la cual se unieron la Jueza Presidenta señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Luis M. Morales Tañón
  Peticionario

       v.

Autoridad de Energía Eléctrica
  Recurrida

Edgardo Vázquez Báez
  Interventor

*Certiorari*

CC-2014-873


Opinión disidente emitida por la Jueza Asociada Oronoz Rodríguez a la que se unen la Jueza Presidenta señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez


En San Juan, Puerto Rico, a 23 de julio de 2015.

En el caso de autos, una mayoría de este Tribunal concluye que la Autoridad de Energía Eléctrica (AEE o parte recurrida) no observó el principio de mérito y, atribuyéndose facultades que no le corresponden, determina que el candidato idóneo para el puesto no es el Ing. Edgardo Vázquez Báez (ingeniero Vázquez Báez), sino el Lcdo. Luis M. Morales Tañón (peticionario). Del expediente surge claramente que la selección de la AEE no fue arbitraria ni irrazonable y que no fue contraria al principio de mérito. Por entender que el peticionario no señaló prueba en el expediente que demostrara que la actuación administrativa

no estuvo fundamentada en evidencia sustancial y toda vez que no se configuran las razones por las cuales deba ceder la deferencia judicial hacia las determinaciones administrativas, respetuosamente disiento.

I

Los hechos que iniciaron esta controversia se circunscriben, en esencia, a una convocatoria realizada por la AEE para la plaza de Presidente del Comité de Subastas B. Tras ello, se nombró un Comité de Evaluación (Comité) compuesto por tres miembros para seleccionar a la persona que ocuparía dicha plaza. El Comité, dentro de sus prerrogativas, entendió necesario "seleccionar una persona con los años de servicio, capaz de conocer las inquietudes del personal, que acelerara órdenes de compra por prioridad y que tuviera destrezas administrativas a nivel ejecutivo, así como experiencia en la evaluación de subastas, en la generación de órdenes de compra y contratos".[19]

Antes del proceso de entrevistas, el Comité estableció cuatro criterios que tendrían relevancia al momento de adjudicar la plaza: (1) experiencia administrativa a nivel ejecutivo; (2) experiencia en evaluación de subastas; (3) experiencia en el proceso de compras; y (4) años de experiencia en la AEE. Cabe enfatizar que el Comité razonó que para el puesto se necesitaba una persona técnica, por lo cual consideró

---

[19] Apéndice, pág. 133.

necesaria la experiencia en evaluación de subastas, mas determinó que no era indispensable la experiencia en la etapa de adjudicación.[20]

Tras los trámites de rigor, el Comité evaluó cinco candidatos y creó una tabla comparativa de éstos. En dicha tabla se incluyeron los criterios que se utilizaron para adjudicar la plaza, a saber: si el candidato era veterano, la "preparación académica, licencias, colegiaciones, créditos universitarios relacionados, experiencia en compras y trabajo administrativo a nivel ejecutivo, años de servicio en la AEE, adiestramientos y seminarios, exámenes aprobados, destrezas o habilidades necesarias, reconocimientos, evaluaciones, asistencia y puntualidad, disponibilidad para el trabajo y tiempo extra, historial disciplinario y contestaciones a preguntas relacionadas al puesto".[21]

Culminado el proceso de evaluación, el Comité consideró que el peticionario y el ingeniero Vázquez Báez eran candidatos idóneos para el puesto. Sin embargo, al compararlos y evaluar todos los criterios, recomendó la adjudicación de la plaza de Presidente del Comité de Subastas B al ingeniero Vázquez Báez. Esta determinación fue confirmada por la Oficial Examinadora de la AEE quien concluyó que no surgían:

> "[…] hechos, circunstancias ni indicios de
> irregularidad en el proceso de evaluación de
> los candidatos o que indiquen la existencia de

---

[20] Íd.
[21] Apéndice págs. 134 y 490.

CC-2014-873

arbitrariedad o discrimen por razones prohibidas en la selección. El querellante no estableció, mediante prueba, que la recomendación y nombramiento del Sr. Vázquez Báez se fundamentara en consideraciones ilegítimas ni contrarias al principio de mérito".[22]

Subsiguientemente la determinación de la Oficial Examinadora fue confirmada por el Tribunal de Apelaciones. Inconforme, el peticionario recurrió ante este Tribunal. Argumentó que la decisión de la AEE no estuvo basada en el principio de mérito, sino en elementos subjetivos y discrecionales de la agencia. Ello por entender que él era el candidato más idóneo por su preparación académica, experiencia, adiestramientos, habilidades y destrezas.

II

En la Sentencia emitida se expone de manera correcta la normativa relacionada a la revisión de las determinaciones administrativas. No obstante, debo enfatizar ciertos aspectos. Es sabido que la facultad revisora de este Tribunal en cuanto a las determinaciones administrativas es limitada, debido a que están cobijadas por una presunción de corrección y regularidad. Por ello, debemos ser cuidadosos al intervenir con las decisiones administrativas ya que éstas merecen deferencia por parte de los tribunales. González Segarra _et al_. v. CFSE, 188 DPR 252, 276 (2013). En atención a este principio, la revisión judicial se circunscribe a determinar si la actuación de la agencia fue arbitraria, ilegal o

---

[22] Íd. a las págs. 151-152.

irrazonable, de modo que constituya un abuso de discreción. Otero v. Toyota, 163 DPR 716, 729 (2005).

La mayoría también indica de manera acertada que las determinaciones de hechos incluidas en las decisiones administrativas deben ser sostenidas por los tribunales, si están basadas en evidencia sustancial que surja de la totalidad del expediente. Rebollo v. Yiyi Motors, 161 DPR 69, 76 (2004). Es importante recalcar que el concepto de evidencia sustancial no exige que la decisión de la agencia refleje la única conclusión lógica a la que podría llegar un juzgador. Ramos Román v. Corp. Centro Bellas Artes, 178 DPR 867, 883 (2010) (énfasis suplido).

Además, los tribunales deben abstenerse de sustituir el criterio de la agencia cuando una determinación administrativa esté sustentada por evidencia sustancial que obre en el expediente del caso. Otero v. Toyota, supra; Asimismo, los tribunales no deben sustituir el criterio de la agencia administrativa por el suyo propio, excepto cuando la actuación administrativa sea totalmente arbitraria o se quebranten valores constitucionales fundamentales. Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 DPR 521, 533 (1993). Por ello, hemos establecido que al impugnar las determinaciones de hechos *de una agencia administrativa, la parte tiene el peso de probar que "existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la*

*prueba que tuvo ante su consideración*. Ramos Román v. Corp. Centro Bellas Artes, 178 DPR 867, 882 (2010) (énfasis suplido), Ramírez v. Depto. de Salud, 147 DPR 901, 905 (1999).

De otro lado, nuestra jurisprudencia dispone que las conclusiones de derecho de las agencias administrativas pueden ser revisadas en toda su extensión. Sin embargo, éstas no pueden descartarse libremente por lo cual merecen también deferencia por parte de los tribunales. Ramírez v. Depto. de Salud, supra, pág. 907.

Ello no significa una renuncia a la facultad revisora de los tribunales ni a nuestra capacidad para ofrecer un remedio frente a las actuaciones arbitrarias de las agencias administrativas. Como bien señala la mayoría, existen circunstancias en las que cede la deferencia judicial hacia las determinaciones de los entes administrativos: cuando no están basadas en evidencia sustancial; cuando la agencia erró en la aplicación o interpretación de la ley; y cuando ha mediado una actuación irrazonable e ilegal. González Segarra *et al.* v. CFSE, supra. De una lectura del expediente y de la ponencia mayoritaria se desprende prístinamente que ninguna de las tres circunstancias están presentes en este caso, por lo cual no hay base legal para revocar la determinación de la agencia. Veamos.

III

Al aplicar el marco legal antes expuesto a la controversia ante nuestra consideración, la mayoría concluye que la determinación recurrida no fue razonable y -en contravención a la normativa- sustituye el criterio de la AEE por el suyo. A tales efectos, determina que el peticionario demostró ser el candidato más idóneo para ocupar el puesto de Presidente del Comité de Subastas B. Dicha determinación, sin embargo, no encuentra apoyo en la totalidad del expediente administrativo.

No hay controversia en que tanto el peticionario como el ingeniero Vázquez Báez cumplían con los requisitos para el puesto de Presidente del Comité de Subastas B. El propio peticionario así lo reconoce. No obstante, según éste -avalado por una mayoría de este Tribunal- su experiencia en la adjudicación de subastas era su ventaja sobre el ingeniero Vázquez Báez y por ese hecho debió ser escogido para el puesto. En primer lugar, es importante mencionar que la plaza requería "cuatro años de experiencia y trabajos administrativos o de oficina adquiridas en áreas responsables con los procesos de compras y adjudicación de subastas de la Autoridad y/o en la elaboración de especificaciones para la compra de bienes y servicios".[23]

El Comité consideró que el ingeniero Vázquez Báez, aunque no había participado en la adjudicación de subastas, en sus puestos anteriores en la AEE como Gerente de Proyectos de Construcción y Jefe de la Subdivisión de

---

[23] Apéndice pág.372 (énfasis suplido).

CC-2014-873

Proyectos Especiales emitía recomendaciones relacionadas a las subastas y participaba del proceso mediante la preparación de especificaciones para la compra de bienes y servicios. Por tanto, lo anterior le daba la experiencia necesaria para realizar la labor de adjudicar subastas. Al respecto uno de los miembros del Comité declaró: "le da la experiencia porque él corrió desde abajo hasta arriba" [...] "porque corrió plazas donde se generan las órdenes de compra, que son mayormente, eh, la plaza de Ingeniero Supervisor de Instrumentos es en la Termoeléctrica y ellos generan órdenes de compra, evalúan subastas en la División, en el Directorado de Ingeniería ellos generan contratos y administran los contratos, tenía, tenía experiencia".[24]

Por su parte, la ponencia mayoritaria desaprueba que el Comité no le diera mayor importancia a la experiencia de los candidatos en la adjudicación de subastas y se enfoca en ese único criterio para concluir que la AEE erró al no seleccionar al peticionario para la plaza en cuestión. Ello, a pesar de que el Comité, ente con *expertise* y conocimiento sobre las necesidades del puesto, precisó que dicho criterio no era indispensable. La AEE explicó que gran parte de las subastas que se evalúan son sumamente técnicas.[25] Sobre el particular indicó que la mayoría de las subastas que se evalúan están relacionadas a calderas, retubeo, centrales, lo que corrobora el

---

[24] Apéndice, pág. 350.
[25] Alegato en Oposición a la Expedición de Auto de *Certiorari* de la AEE, pág. 3.

CC-2014-873

carácter altamente técnico de las subastas y la necesidad de que la persona a quien se le adjudicara la plaza fuera conocedora de los procesos técnicos que se llevan a cabo en la agencia.[26] Ese mayor conocimiento, según el Comité, lo tenía el ingeniero Vázquez Báez quien había evaluado compras y subastas durante años.[27]

La AEE expresó, además, que la adjudicación de una subasta es una responsabilidad de todos los integrantes del Comité de Subastas y que el conocimiento técnico del ingeniero Vázquez Báez es una herramienta valiosa para el buen desempeño de dicha función.[28] ¿Acaso este Tribunal conoce mejor la manera más eficiente de evaluar las subastas que se realizan en la AEE? ¿Conoce mejor que la AEE los criterios que son necesarios para el puesto de Presidente del Comité de Subastas B? A diferencia de la mayoría de este Tribunal, no encuentro irrazonables ni ilegales las actuaciones de la parte recurrida.

Asimismo, conforme a la alegación del peticionario en cuanto a su idoneidad para el puesto, en la Sentencia emitida se concluye que la AEE violentó el principio de mérito que estaba obligada a respetar. No estoy de acuerdo. De entrada, conviene destacar que ni el peticionario ni la mayoría de este Tribunal señalan en qué consistió la alegada violación al principio de mérito. Este principio establece que los empleados públicos deben seleccionarse con atención exclusiva a sus méritos, sin

---

[26] Íd. a la pág. 4.
[27] Íd.
[28] Íd. a la pág. 19.

CC-2014-873

distinción de raza, color, nacimiento, edad, origen, o condición social ni por ideas políticas o religiosas. Martínez v. Ofic. del Gobernador, 152 DPR 586, 596 (2000). En este caso, en virtud de dicho principio se compararon todos los candidatos a base de las mismas características, en igualdad de condiciones y mediante elementos objetivos. Para ello se creó una tabla comparativa y cuatro criterios tomando en consideración las necesidades del puesto.

Tras el análisis, surgió que el ingeniero Vázquez Báez tenía más experiencia a nivel ejecutivo, más años de servicio en la AEE y vasta experiencia en el proceso de evaluación de subastas, así como en el proceso de compras. En detalle, el ingeniero Vázquez Báez tenía 2 años de experiencia a nivel ejecutivo, mientras el peticionario tenía 10 meses; el ingeniero Vázquez Báez contaba con 21 años y 9 meses de servicio en la AEE y el peticionario tenía 18 años y 5 meses; en relación a la experiencia en compras, el ingeniero Vázquez Báez tenía 12 años y 6 meses, mientras que el peticionario tenía 14 años de experiencia. Sólo en este último renglón el peticionario tenía 1 año y seis meses más de experiencia que el ingeniero Vázquez Báez.

Sin embargo, la leve ventaja en este único aspecto, se disipa al tomar en consideración que el peticionario tenía historial disciplinario en la AEE. Adviértase que el historial disciplinario de los candidatos fue uno de los elementos que evaluó el Comité. El ingeniero Vázquez Báez no tenía historial disciplinario, circunstancia de gran

importancia para ocupar el puesto de Presidente.[29] Curiosamente, la mayoría de este Tribunal no lo entiende así y reduce a una nota al calce un criterio tan relevante para un puesto de semejante jerarquía. El expediente está huérfano de irregularidades, arbitrariedad o discrimen. Tampoco hay evidencia de que la determinación administrativa trastocó el principio de mérito.

De otra parte, el peticionario argumenta que la parte recurrida no consideró la totalidad de la información que tenía ante sí sobre sus credenciales, sino que sólo evaluó los cuatro criterios que estableció alegadamente de manera arbitraria. Otra vez, este argumento pierde fuerza ante la prueba en contrario que surge del expediente administrativo.[30] El Comité tuvo ante sí el *curriculum*

---

[29] Íd. a la pág. 20.

[30] De la declaración de uno de los miembros del Comité Evaluador, el Sr. Confesor Vega Maisonet, surge que dicho Comité consideró todo el historial de cada uno de los candidatos. Transcripción de la vista administrativa de 27 de enero de 2012, Apéndice págs. 48-52:
Lcdo. César Rosado:
P. Ya usted dijo que era necesario tener experiencia en adjudicación de subasta, pero a preguntas nuestras usted indicó que no habían evaluado eso de, no pudieron haber evaluado… ¿No evaluaron eso en relación al señor Morales Tañón y al señor Edgardo Vázquez?
R. Eh, te puedo contestar sí y no.
P. ¿Por qué? ¿Por qué?
R. Porque tengo que explicar.
P. Explíqueme.
R. En mi experiencia y en la experiencia de los miembros de Comité, nosotros conocemos, conocíamos a cada uno de los candidatos y sabíamos de dónde habían venido el señor Morales, el licenciado, sabíamos que había venido del Comité de Subastas, y no le íbamos a hacer una pregunta de si le habían adjudicado una subasta si toda la Vitae [sic] de él hace adjudicación de subasta, sí muchas más. Y habíamos visto el del Ingeniero Edgardo Vázquez también yo lo conocía y en su experiencia como Superintendente de Proyectos también.
P. ¿Pero cuando ustedes lo evaluaron no había adjudicado una subasta?
R. Eh, eh, no, en sí, el que adjudica una subasta es el Comité. Nosotros recomendamos adjudicación como miembros.
P. ¿Cómo usuarios?
R. Como usuarios recomendamos adjudicación.
P. ¿En ese sentido quién más tenía experiencia como adjudicando subasta en comparación a ambos es el licenciado Morales Tañón y es con muchísima más experiencia?
R. Sí, es correcto, todo el tiempo ha sido…

*vitae* del peticionario del cual surgía todo su historial profesional; también contó con la tabla comparativa preparada por el Comité en la cual se exponían los detalles relacionados a licencias, reconocimientos y evaluaciones, entre otros. Así, tanto la Oficial Examinadora de la AEE como el Tribunal de Apelaciones concluyeron que la parte recurrida evaluó y tomó en cuenta las capacidades e historial del peticionario y del ingeniero Vázquez Báez.

En fin, el Comité determinó que el candidato más idóneo para el puesto era el ingeniero Vázquez Báez y para ello utilizó criterios objetivos y legítimos, los cuales surgen de memorandos y de una tabla comparativa de todos

---

P. Todo el tiempo ha estado en este Comité Permanente e inclusive ha sido Presidente, ya eso lo hablamos. Pero lo importante es que, porque ustedes están buscando un técnico, pues en ese sentido quedaba como descartado…

Honorable Árbitro Bertha Mainardi:

No me haga preguntas alusivas.

[…]

P. Pero le pregunto si como usted estaba buscando noventa por ciento, noventa y, ustedes señalaron, el Comité determinó que el noventa, eh, por ciento de las subastas son para la adquisición de bienes o servicios técnicos. Y ustedes estaban buscando una persona técnica, ¿eso es correcto?

R. Eso es así.

P. Y en ese sentido, ¿descartaron al licenciado Morales Tañón?

R. Es sí, no.

P. Está bien.

Honorable Árbitro Bertha Mainardi:

¿Quiere que se lo explique, licenciado?

Lcdo. César Rosado:

P. Sí, explíquelo.

R. Este, cuando se evaluaron los cinco candidatos se tomó la experiencia entre los cinco candidatos, eh, el licenciado Luis Morales Tañón y el ingeniero Edgardo Vázquez Báez eran los candidatos idóneos para el puesto, cualquiera de los dos. Pero había que escoger uno. El problema es que teníamos disyuntivas, teníamos que escoger a uno, no podíamos escogerlos a los dos. Y ahí se aprobaron los cuatro aspectos estos que se dicen ahí, en el Memorando de Adjudicación, que fue la experiencia, eh, en el proceso completo, porque en el proceso completo de, de, de órdenes de compra cuando nace la orden y hay un pensamiento de que la orden se va a hacer, está en los usuarios. Y pasa a los usuarios, pasa hace la orden, hace el contrato…

P. Eso, lo entendemos.

R. Entonces por eso, entonces todo eso, entonces eso tuvo que ver tanto en la adjudicación. Pero si tú me dices…

P. Por eso pero…

R. Los dos eran idóneos.

los candidatos. La Oficial Examinadora evaluó la selección del Comité a la luz del principio de mérito y concluyó que no hubo irregularidades y que ésta se realizó conforme a derecho y a la normativa aplicable a la AEE. Posteriormente, el Tribunal de Apelaciones revisó la determinación de la Oficial Examinadora y mediante una fundamentada Sentencia concluyó que la presunción de corrección que cobija a las determinaciones administrativas no fue rebatida por el peticionario. Coincido con todos los anteriores. Nuestra función no es seleccionar al candidato que quisiéramos -en el mejor de los casos por razones legítimas- sino revisar si la selección del Comité fue razonable y estuvo basada en evidencia sustancial que surge del expediente administrativo. Todavía más, el efecto de la decisión que hoy toma la mayoría es separar al ingeniero Vázquez Báez como Presidente del Comité de Subastas 7 años luego de que fuera seleccionado como tal. Nótese que el puesto le fue adjudicado al ingeniero Vázquez Báez en el 2008.

En este caso, tras el estudio cuidadoso del expediente estoy convencida de que la decisión de la agencia está basada en evidencia sustancial, no surge error en la aplicación o la interpretación de la ley y no se desprende una actuación irrazonable, ilegal o discriminatoria. En consecuencia, no se configura ninguna de las circunstancias por las cuales deba ceder la deferencia hacia las determinaciones administrativas.

Así pues, confirmaría la determinación del Tribunal de Apelaciones. No le corresponde a este Tribunal sustituir el criterio de la agencia por el suyo propio. La determinación de la parte recurrida fue razonable y está sustentada por la prueba detallada en el expediente. Sencillamente, el peticionario —más allá de una alegación acomodaticia en la que indica que era el candidato idóneo— no logró señalar prueba en el récord que demostrara que la actuación de la AEE no estuvo fundamentada en evidencia sustancial. De la misma manera, una mayoría de este Tribunal trastoca impropiamente la determinación de la parte recurrida sin fundamentar por qué no es razonable. Se aparta de normas firmemente establecidas sobre la revisión de determinaciones administrativas y revoca equivocadamente la decisión de la AEE. No puedo coincidir.


Maite D. Oronoz Rodríguez
Jueza Asociada